Michael GAVE

v.

GRACE LINE, INC., Alfred De Smedt and Roy Thomas Currie.

Civ. A. No. 29672.

United States District Court
E. D. Pennsylvania.

Dec. 7, 1964.

Norman Shigon, Philadelphia, Pa., for plaintiff.

Thomas E. Byrne, Jr., and Krusen, Evans & Byrne, Philadelphia, Pa., for defendant.

BODY, District Judge.

This action was instituted on May 25, 1961 naming as defendants: (1) Grace Line, Inc., the owner and operator of the S.S. Santa Barbara; (2) Alfred De Smedt, the captain of the said ship; and (3) Roy Thomas Currie, its third mate.

On or about April 3, 1957 plaintiff had signed shipping articles to be employed as a second electrician aboard defendant's vessel, the Santa Barbara, whose destination was South America. When the ship arrived in Valparaiso, Chile, on April 21, 1957 plaintiff's duties as an electrician required him to stay on board ship during the day while cargo operations were in progress. However, plaintiff went ashore on this day on two separate occasions, once during the noon-hour break and once during the supper-hour break. While aboard the ship plaintiff occupied a room with the chief electrician who left the ship shortly after its arrival at Valparaiso for the purpose of being married, and did not return to the vessel until and after the incident which led to the filing of this complaint.

After Gave returned to the ship from his early evening break, he was met by Roy Thomas Currie, the third mate. Mr. Currie advised the plaintiff that the Chilean police were aboard and wished to search his quarters, and it was desired that plaintiff be there when this was

done. Plaintiff unlocked the door to his quarters and after a search of the quarters, 10,000 rounds of 22-caliber rifle cartridges were found. Immediately after the discovery of the cartridges the Chilean police brought into the quarters a Chilean civilian who identified the plaintiff as the member of the crew of the ship who had sold some 22-caliber rifle shells to him earlier on the same day. Plaintiff was then taken to the Chilean courts, a preliminary hearing was held, plaintiff was released on bail, then tried and convicted and sentenced for this offense. Plaintiff appealed his conviction and the Appellate Court released him from the custody of the Chilean authorities. The record is not clear as to whether the conviction was set aside, the sentence reduced, or what final disposition was made of the case before the Appellate Court.

Plaintiff has asserted forty-five allegations against the defendants in his complaint. Due to the nature of these allegations and in order to promote justice, plaintiff was afforded approximately six months to proceed with his discovery to support the allegations. Furthermore, defendants have moved for summary judgment and therefore, all factual issues material thereto should be raised and considered in the final disposition of this matter.

The essence of these allegations is that the defendants, Grace Line, Inc., Alfred De Smedt and Roy Thomas Currie, jointly and severally charged the plaintiff with the theft of 10,000 rounds of 22-caliber bullets; the plaintiff was forceably removed from the vessel by the Chilean police; the Master refused to repatriate the plaintiff; the Master did not request the Chilean authorities to turn over the plaintiff to him; the defendants refused to furnish plaintiff with the services of the American Consulate and plaintiff was refused communication with the American Consulate; the defendants refused to furnish plaintiff with an attorney to protect his rights; the plaintiff was illegally discharged from his vessel and abandoned in a foreign port; the plaintiff was tried by a Chilean court and was placed in a Chilean jail or prison where he became ill due to inadequate medical care and improper food.

■ The employment contract between a master and a seaman which finds its expressions in the articles obligates the former to bring home every seaman he signs aboard his vessel. For certain causes he is excused from this duty but only if these actions are placed in the jurisdiction and control of a United States consular officer when they occur at a foreign port. For improperly leaving any seaman in a foreign port the master is liable to the seaman in a civil action; and in addition, if he abandons the seaman maliciously, he is subject to criminal prosecution. 18 U.S.C.A. § 2195.

The question of jurisdiction arises in regard to a seaman who has committed a serious crime aboard a vessel while in the territorial waters of another sovereign state. Jurisdiction can be claimed, and has been taken, by the sovereignty whose flag the ship is flying. The present posture of this question indicates that the jurisdiction is concurrent and that the local sovereignty (Chile) may act on the premises unless it chooses to yield. United States v. Flores, 289 U.S. 137, 53 S.Ct. 580, 77 L.Ed. 1086 (1933); Wildenhus' Case, 120 U.S. 1, 7 S.Ct. 385, 30 L.Ed. 565 (1887). This Court is not faced with this identical problem since the crime committed, namely: the sale of the ammunition, was alleged to have been onshore during plaintiff's lunchbreak, and not when he was aboard the vessel.

However, due to the fact that the actual arrest took place aboard the S.S. Santa Barbara, a further discussion of the problem is necessary. In the Wildenhus' Case, supra, a homicide was committed aboard a Belgium vessel lying in New Jersey waters. Jurisdiction was claimed by the Belgian Consul. A convention between Belgium and the United States gave consular officers of the sovereignty of the vessel sole cognizance of offenses on board ship, except those of a nature

which would disturb the tranquility and public order on shore. The court stated at page 12, 7 S.Ct. at page 387:

" * * * But, if crimes are committed on board of a character to disturb the peace and tranquility of the country to which the vessel has been brought, the offenders have never, by comity or usage, been entitled to any exemption from the operation of the local laws for their punishment, if the local tribunals see fit to assert their authority. * * "

■ It is to be noted from the deposition of the plaintiff at page 31 that at the time of these incidents the government of Chile was in what could be called a state of emergency as the result of numerous civil uprisings that were occurring throughout the country. Obviously, the unauthorized sale of a large quantity of ammunition at this time would be such an activity to aid in the disturbance of the peace and tranquility of the Chilean government. Thus it seems clear that the government of Chile had a right to assert its authority and jurisdiction over this person and matter. Consequently all allegations of the plaintiff in reference to his illegal detainment and defendants' refusal to repatriate him are without merit. Extensive research has not revealed any treaty between the United States and Chile as to this jurisdictional problem.

■ Plaintiff has alleged that he was denied the services of the American Consulate. A consular official is regarded, among other things, as an advisor and counsellor of a seaman. It is the duty of the Consul, upon the showing by a seaman that he is in difficulty either aboard ship or ashore, to investigate the charges at once and to take appropriate action. 22 CFR 83.1 to 83.11. A review of plaintiff's deposition reveals that appropriate consular action was taken and that the circumstances surrounding his arrest and trial were initiated and carried out by the Chilean authorities and not by any of the named defendants.

Paraphrasing plaintiff's deposition the following facts are revealed:

(P. 14) When plaintiff returned to the ship after his afternoon visit ashore, he was met by Mr. Currie, third mate, and was informed that the Chilean police wanted to search his quarters. Upon reaching his quarters plaintiff used his own key and opened the door for the police.

(P. 22) Captain De Smedt informed plaintiff that he would have to go along with the Chilean police and that the American Consul would be duly notified.

(P. 28) Plaintiff was arrested on April 21, 1957 and retained his own lawyer on April 22, 1957.

(P. 31) On the morning of April 22, 1957 a Chilean employee of the American Consul visited the plaintiff and stated that he would go to the ship and speak to the ship's delegates to see what could be done.

(P. 33) In quoting Mr. Currie plaintiff stated: "He said the company was looking after my interests, they would try to do something for me. That was prior to my trial in the customs court."

(P. 34) While plaintiff was in prison he was visited by another lawyer, not his own, in reference to obtaining plaintiff's release from prison. This lawyer was sent by the American Consul. (See deposition of Alfred De Smedt, defendant)

(P. 39) Plaintiff stated that neither De Smedt nor Currie had testified that they had witnessed plaintiff or the informer passing the cartridges back and forth, and to the best of plaintiff's knowledge there was no entry in the court's record of this.

■ The above illustrates only a sample of what was stated by the plaintiff under oath in his deposition. After a complete reading of plaintiff's deposition and a review of all of the other facts presented to the Court, including defendant De Smedt's deposition, it is my opinion that plaintiff has not stated a cause

of action against the named defendants. Accordingly, there is no genuine issue as to any material fact remaining. Thus, summary judgment is hereby granted for all defendants.