Richard RUSSELL, Plaintiff,

v.

STATES STEAMSHIP COMPANY, a
corporation, Defendant.

Civ. No. 71–917.

United States District Court,
D. Oregon.

June 25, 1973.

Pozzi, Wilson & Atchison, Portland, Or., for plaintiff.

Erskine Wood, John R. Brooke, Wood, Wood, Tatum, Mosser & Brooke, Portland, Or., for defendant.

## OPINION

SKOPIL, District Judge:

Presently pending before the Court is a motion for a directed verdict made on behalf of the defendant. I have given the matter considerable thought and realize that my decision is not only important to the parties but also as a possible precedent.

The evidence shows the following: that the plaintiff and a fellow seaman, Richard Holt, were able-bodied seamen aboard defendant's vessel, the S.S. OREGON. On the night of February 24, and the early morning hours of February 25, 1970, the vessel was discharging cargo in Saigon, Republic of Vietnam. The plaintiff and Holt, having been on shore leave, returned to the vessel in the evening of February 24, 1970. Upon their return to the ship, they met and spent some time drinking with several Vietnamese longshoremen. Subsequently, the longshoremen became noisy and the plaintiff informed them that he would report them to the ship's personnel if they did not quiet down and return to their work.

Shortly thereafter, the First Mate was awakened by two Vietnamese who accused Russell and Holt of throwing a Vietnamese watchman overboard. The First Mate called the military police, since the ship was lying at a military dock. The South Vietnamese police ac-

companied the military police aboard. Two Vietnamese identified plaintiff and Holt as the persons responsible for the act. Plaintiff and Holt denied any responsibility and have continued to deny responsibility.

The Captain came on deck and talked with the two accused men and the military police. Having been told by the military police that it would be necessary for Russell and Holt to make a statement proving their innocence, the Captain suggested that the men go ashore with the military police. It was the intention of the Captain that the ship drop down the river to Vung Tau to wait for the two crew members to rejoin the ship.

Plaintiff and Holt were put in a waterfront jail for two days, and were later transferred to Chi Hoa prison. They were visited by the vice consul from the U.S. Embassy and received their mail and money. They later retained a lawyer, whose name was among a list given them by the U.S. Consul, and who ultimately arranged for their release on bail, which they forfeited to return home to the United States.

The conditions of the plaintiff's imprisonment were substandard, even sub-human. The plaintiff and Holt were without adequate medical care, food, or clothing. They were bitten by rats, suffered from dysentery, forced to sleep on a concrete floor, and lost a great deal of weight.

The plaintiff brings this action for damages for wrongful imprisonment, loss of wages, and personal injuries alleged to have been suffered by him as a consequence of his employment aboard the S.S. OREGON as a crew member. Jurisdiction is based upon diversity of citizenship, 28 U.S.C. § 1332, and upon the Jones Act, 46 U.S.C. § 688.

To establish liability, plaintiff relies on a violation of the Jones Act and negligence. Case precedent is of little assistance but does provide some principles upon which I have based my decision.

■ It has been the rule from an early period that a master cannot lawfully discharge seamen in foreign ports without the express approval of the United States Consul.

A master who discharges a seaman at a foreign port without the express approval of an American consul leaves himself open to serious charges both criminally and civilly for improper discharge and possibly for abandonment of the seaman. The discharge of a seaman before a consul is as much a protection of the master as it is of the seaman. Rarely can the master be justified in discharging a seaman at a foreign port without the intervention of the consul. 1 Norris, Law of Seamen § 44, at 88 (3d ed. 1970).

As Judge Hand stated in Mattes v. Standard Transportation Co., 274 F. 1019, 1023 (D.C.S.D.N.Y.1921): "It is hornbook law for masters that discharges must be approved by consuls, and the law of the United States is in substance the same."

It was held also in Mali v. Keeper of Common Jail [*Wildenhus' Case*], 120 U. S. 1, 12, 7 S.Ct. 385, 387, 30 L.Ed. 565 (1886), that:

From experience, however, it was found long ago that it would be beneficial to commerce if the local government would abstain from interfering with the internal discipline of the ship, and the general regulation of the rights and duties of the officers and crew towards the vessel, or among themselves. And so by comity it came to be generally understood among civilized nations that all matters of discipline, and all things done on board, which affected only the vessel, or those belonging to her, and did not involve the peace or dignity of the country, or the tranquility of the port, should be left by the local government to be dealt with by the authorities of the nation to which the vessel belonged as the laws of that nation or the interests of its commerce should

**236**

require. But, if crimes are committed on board of a character to disturb the peace and tranquility of the country to which the vessel has been brought, the offenders have never by comity or usage been entitled to any exemption from the operation of the local laws for their punishment, if the local tribunals see fit to assert their authority.

In United States v. Flores, 289 U.S. 137, 157–159, 53 S.Ct. 580, 585, 77 L.Ed. 1086 (1932), the Court said:

A related but different question, not presented here, may arise when jurisdiction over an offense committed on a foreign vessel is asserted by the sovereignty in whose waters it was laying at the time of its commission, since for some purposes, the jurisdiction may be regarded as concurrent, in that the courts of either sovereignty may try the offense.

There is not entire agreement among nations or the writers on international law as to which sovereignty should yield to the other when the jurisdiction is asserted by both . . . . The position of the United States . . . has been that at least in the case of major crimes, affecting the peace and tranquility of the port, the jurisdiction asserted by the sovereignty of the port must prevail over that of the vessel.

A more complete examination of these authorities is set forth in Gave v. Grace Line, Inc., 237 F.Supp. 557, 559 (E.D. Pa.1964), a recent decision in which the Court said:

The question of jurisdiction arises in regard to a seaman who has committed a serious crime aboard a vessel while in the territorial waters of another sovereign state. Jurisdiction can be claimed, and has been taken, by the sovereignty whose flag the ship is flying. The present posture of this question indicates that the jurisdiction is concurrent and that the local sovereignty . . . may act on the premises unless it chooses to yield.

This rule has now been incorporated in the Code of Federal Regulations, Title 22, Section 83.8(a), at page 172, which reads:

*Offenses involving the peace of the port.* When an offense is committed aboard a merchant vessel in the port or territorial waters of a nation other than the nation of registry, and when the offense involves the peace of the port, the nation in whose waters the offense is committed has jurisdiction under an accepted principle of international law.

■ Thus, it appears from the cases I have noted and the Code of Federal Regulations that the Captain had a duty:

1) To ascertain whether a crime had been committed;

2) To ascertain whether a member of his crew was chargeable for the offense; and

3) To determine whether the alleged crime committed aboard his vessel in the port or territorial waters of a nation other than the nation of registry involved the peace and tranquility of the port.

The Captain, from the evidence supplied to him, had good cause to believe the existence of the following facts:

1) A crime had been committed;

2) The plaintiff was accused by at least one Vietnamese longshoreman, an alleged eyewitness, of the crime; and

3) The crime did involve the peace and tranquility of the port—alleged murder of a foreign citizen who was employed as a longshoreman aboard the vessel.

Therefore, as I consider the contentions of the plaintiff in the pretrial order, it appears that:

■ 1) Ordering and directing Russell to submit to the custody of the U.S. Military Police or Saigon Police did not constitute an act of negligence under the facts known to the Captain.

2) Ordering Russell to leave the vessel in the custody of the U.S. Military

Police and/or Saigon Police was not negligent.

■ 3) I find no duty imposed upon the defendant to provide counsel for Russell during imprisonment. Moreover, it appears that Russell had the benefit of counsel whose name was supplied by the U.S. Embassy.

4) I find no obligation on the part of the Captain to obtain Russell's release from imprisonment and return to the vessel before permitting the vessel to leave the Port of Saigon without the consent of the U.S. Consul.

■ 5) Directing and permitting the S.S. OREGON to leave the Port of Saigon before obtaining Russell's release and return is not a basis for liability, since no duty would be imposed upon a vessel to remain in port until a seaman returned under the circumstances of this case.

■ 6) No duty existed on the part of States Steamship under the law and usage of the Republic of Vietnam to provide funds to obtain Russell's release from imprisonment.

■ 7) No duty existed to provide Russell with medical care during his detention in Vietnam, since the crime with which he was charged was a willful act on his part.

■ 8) With respect to defendant's failure to provide Russell with food, clothing and other necessities during his detention in Vietnam, the defendant had a right to assume that the proper food, clothing, and other necessities would be provided by a third party, namely the Republic of Vietnam. Moreover, no such duty was owed to the plaintiff.

■ 9) No duty existed under the facts of this case to ascertain whether Russell required legal assistance, funds, medical care, food, clothing, or other necessities during his detention in Vietnam.

■ In addition, it appears that plaintiff's theory of recovery under the Jones Act is not well-founded. Plain-

tiff's damages do not fall within the purview of the Act, in that he did not sustain personal injuries in the course of his employment. Further, if the defendant owed a duty to plaintiff and did breach the duty, the record fails to show that such breach caused the damages plaintiff seeks to recover in this action.

Therefore, the motion for a directed verdict is granted.