**Francis FARAOLA, Plaintiff-Appellant,**

v.

**Jack O'NEILL and the YACHT MARIE CELINE, Defendants-Appellees.**

No. 77–1886.

United States Court of Appeals, Ninth Circuit.

May 26, 1978.

Rehearing Denied June 26, 1978.

---

Wayne M. Collins, of San Francisco, Cal., Jay W. Jacobs (argued), San Francisco, Cal., for plaintiff-appellant.

John G. Schwartz (argued), of Lillick, McHose & Charles, San Francisco, Cal., for defendants-appellees.

Before BROWNING and HUFSTEDLER, Circuit Judges, and BONSAL,* District Judge.

BONSAL, District Judge:

Appellant Francis Faraola instituted this maritime action in the United States District Court for the Northern District of California seeking to recover damages from the appellees, the yacht MARIE CELINE and its owner Jack O'Neill. Appellant contends that the 10½ months he was required to spend in a Mexican jail came about by reason of the unseaworthiness of the MARIE CELINE and abandonment. The District Court granted summary judgment in favor of appellees. This appeal followed. We affirm.

In the spring of 1975, appellee Jack O'Neill enlisted the appellant and his brother to come to Acapulco, Mexico to help his children Mike and Shawn O'Neill sail his yacht, the MARIE CELINE, back to Santa Cruz, California. On the third day of a stop at Cabo San Lucas—a small Mexican port in Baja, California—the appellant, who claims he was a crewman and not a guest, was smoking marijuana aboard the vessel with two American girls; other members of the crew had gone ashore. Unfortunately for the appellant, around noon that day, Mexican authorities, who were inspecting vessels in the harbor, boarded the MARIE CELINE and seized a plastic bag containing marijuana. (Appellant had the bag in his possession and attempted to hide it when the authorities began boarding the vessel.) The authorities arrested appellant, the two girls, and upon their return to the vessel, the master Michael O'Neill and David King, a passenger.

After spending the night in jail, all five were taken to La Paz, Mexico. There, a Mexican attorney advised the group that if the appellant admitted his guilt and "took the rap"—as he had been the one who had allegedly been seen with the marijuana—

* Honorable Dudley B. Bonsal, Senior United States District Judge, Southern District of New York, sitting by designation.

the others would be released and the vessel would not be impounded. He also represented to appellant that he could get him released five days later. Appellant therefore "took the rap" by confessing to possession of the marijuana. However, he was not released within five days. He remained incarcerated for more than ten months—despite the efforts of appellee Jack O'Neill to secure his release.

Because the vessel's master, Mike O'Neill, permitted David King to bring marijuana aboard and indeed brought some aboard himself, appellant claims that the vessel was unseaworthy. The District Court held that appellant's possession and concealment of the marijuana precluded any alleged unseaworthiness from being the proximate cause of his injuries. As for his claim of abandonment, the Court denied it because appellant was in the lawful custody of the Mexican authorities.

## I. Unseaworthiness

■ To recover for unseaworthiness, an injured seaman must prove that an unseaworthy condition proximately caused his injuries. See 1B Benedict on Admiralty § 28 at 3–162 (7th ed. 1976). The doctrine of unseaworthiness requires a shipowner "to furnish a vessel and appurtenances reasonably fit for their intended use." Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960). Although it imposes strict liability upon a shipowner, "[s]eaworthiness is a relative term; a vessel may have that quality in port, and yet be wholly unfit for rough water . . . ." Lester v. United States, 234 F.2d 625, 629 (2d Cir. 1956), appeal dismissed, 352 U.S. 983, 77 S.Ct. 130, 1 L.Ed.2d 85 (1957), quoting Hanrahan v. Pacific Transport Co., 262 F. 951, 952 (2d Cir. 1919). This relativity is a function of the risk from which this doctrine is intended to

protect the seaman. Because a seaman must be protected from those dangerous conditions beyond his control, see Waldron v. Moore-McCormack Lines, Inc., 386 U.S. 724, 728, 87 S.Ct. 1410, 18 L.Ed.2d 482 (1967); Little v. Green, 428 F.2d 1061, 1067 (5th Cir.), cert. denied, 400 U.S. 964, 91 S.Ct. 366, 27 L.Ed.2d 384 (1970), and because he is subject to "the rigorous discipline of the sea" with "little opportunity to appeal to the protection from abuse of power which the law makes readily available to the landsman," Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 430, 59 S.Ct. 262, 266, 83 L.Ed. 267 (1939), "large responsibility for his safety" is placed on the owner. Mahnich v. Southern Steamship Co., 321 U.S. 96, 103, 64 S.Ct. 455, 88 L.Ed. 561 (1944). Clearly, the risk that the availability of marijuana aboard a vessel would lead to its use by a seaman, resulting in his arrest and incarceration, is not within those risks from which the doctrine of seaworthiness was developed to protect seamen.[1]

Furthermore, even if the presence of marijuana aboard a vessel could make it unseaworthy under certain circumstances, such unseaworthiness could not be deemed the proximate cause of appellant's injuries. To recover, the unseaworthiness would have had to have been a substantial factor in producing appellant's injuries. Cf. Farnarjian v. American Export Isbrandtsen Lines, Inc., 474 F.2d 361 (2d Cir. 1973); Morris v. Blue Star Lines, 193 F.Supp. 763 (D.Ore. 1961). While appellant's use of the marijuana and his confession thereto were both substantial factors leading to his incarceration, the master's acquiescence in the presence of marijuana aboard the vessel—the alleged unseaworthy condition—was not. See Jackson v. Pittsburgh S.S. Co., 131 F.2d 668, 669 (6th Cir. 1942).[2]

Appellant's alternative theory of liability under the Jones Act, 46 U.S.C. § 688, like-

---

1. In contrast, the risk that marijuana might so affect a crew that they would become undisciplined, thus endangering appellant's safety, and placing him at their mercy, might rise to the level of unseaworthiness. Cf. Reyes v. Vantage Steamship Co., Inc., 558 F.2d 238, 248 (5th Cir. 1977) (dissent).

2. Another reason for affirming the District Court is that courts will frequently not assist one wrongdoer in taking advantage of another wrongdoer, as here. E. g., Wager v. Pro, 391 F.Supp. 752, 754 (D.D.C.1975).

wise provides no basis for liability. Although the proximate cause standard under the Jones Act is more generous to the seaman than the standard applied under general maritime law (*Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1977)), it is nevertheless inadequate to reach the results that appellant seeks. The master's acquiescence in the presence of marijuana aboard the vessel did not play any part in producing appellant's incarceration.

## II. *Abandonment*

■ Appellant also argues that the appellees abandoned him by permitting him to "take the rap" for the possession of marijuana. The District Court denied appellant's claim of abandonment because "the vessel, for obvious reasons, can't do anything about someone who is in lawful custody . . . ."

Abandonment stems from "the master's obligation implied in the shipping contract, to bring the seaman back with him unless he has been left at the foreign port because of illness, discharge before an American consul, desertion or failure to join." While "[m]asters should be extremely cautious about causing a seaman to be imprisoned in a foreign jail," * * * "[t]here is no liability visited upon the vessel or master for the seaman's imprisonment ashore, when it arises from the independent action of the local police or when it is due to the seaman's disturbance of the peace of the port." 1 M. Norris, *The Law of Seamen* § 500 at 590–1 (3d ed. 1970). As appellant concededly used the marijuana, after which he was arrested and convicted by Mexican authorities, he has no claim for abandonment. In *Russell v. States Steamship Co.*, 376 F.Supp. 233 (D.Ore.1973), where the plaintiff seaman and another seaman were accused of murdering a Vietnamese watchman, the Court held that the captain had no obligation to obtain his release from imprisonment or his return to the vessel before permitting it to leave the port. Surely, appellant's decision to confess to a crime he committed—although it may have saved the

others from also being convicted—cannot be considered abandonment or impose liability on appellees. *Cf. Robertson v. States Marine Lines, Inc.*, 76 Wash.2d 795, 459 P.2d 37 (1969).

Accordingly, the judgment of the District Court is affirmed.