Michael K. BERNARD,
Plaintiff–Appellant,

v.

MAERSK LINES, LTD.,
Defendant–Appellee.

No. 92–56158.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 8, 1994.

Decided April 22, 1994.

Lynne E. Rasmussen, Stolpman, Krissman, Elber, Mandel & Katzman, Long Beach, CA for plaintiff-appellant.

Dawn Schock and William Collier and Michael Armitage, Keesal, Young & Logan, Long Beach, CA for defendant-appellee.

Before: PREGERSON, O'SCANNLAIN, and FERNANDEZ, Circuit Judges.

Opinion by Judge FERNANDEZ.

Appeal from the United States District Court for the Central District of California.

FERNANDEZ, Circuit Judge:

Michael Bernard, a seaman, appeals the district court's grant of summary judgment in favor of his employer, Maersk Lines, Ltd., in his admiralty suit, seeking damages under the Jones Act, 46 U.S.C.App. § 688, for personal injury sustained in an accident aboard Maersk's vessel. The district court held that Bernard's claims were barred because his injury resulted from a dangerous condition caused by his own breach of a "primary duty," which he owed to Maersk pursuant to the terms of his employment. We reverse.

## BACKGROUND [1]

Bernard worked for Maersk as chief cook on the vessel M/V First Lt. Alex Bonnyman. Among his duties as chief cook were loading food stores into the ship's freezers, and keeping the freezers clean, orderly, and generally safe.

At the time of the accident, the Bonnyman was under charter to the United States military's Sealift Command. In addition to its regular crew, the vessel had about 120 military personnel on board. Because of the additional passengers, the Bonnyman had to take on more stores than usual. Those additional stores overloaded the kitchen's storage facilities, which required the chief steward, John Mortinger, and his crew to stack food boxes wherever they could find room. In the meat locker, this meant stacking boxes as high as they could go, both on and under the storage shelves and in the aisles between them.

On December 5, 1990, the ship received a large load of food stores. Because of the unusual size of the load, the chief steward took charge of the loading operation. A large ship's crane loaded the stores onto the vessel, and once they were on the storage deck, crew members, including the military people, formed a human conveyer belt. They passed boxes, at Mortinger's direction, to the appropriate food lockers. Mortinger put one person in charge of each locker, and made that person responsible for stowing the food boxes in the locker. Bernard was in charge of loading stores in the meat locker.

The military personnel made a game of passing the boxes along as quickly as they could, which was often too quick for the person who had to stow the boxes in the food locker. Bernard asked several times for the

---

1. Because this case comes to us on a summary judgment, we state the facts, as we must, from the standpoint of Bernard, the non-moving party.

*See Jones v. Union Pac. R.R. Co.,* 968 F.2d 937, 940 (9th Cir.1992).

process to be slowed, but his pleas fell on deaf ears. The military people did not slow down and even Mortinger, who was in charge of the loading operation, could do nothing to restrain them. It was not possible to go much slower than the military personnel because boxes would then stack up to the point that one could not even move.

Just before his accident, Bernard was loading boxes of lobsters onto a high shelf in the meat locker. The boxes weighed approximately 25 pounds each. He stacked them six to a shelf, in two box stacks. A crew member handed Bernard a substantially heavier box. It weighed about 65 pounds. He knew immediately that it did not contain lobsters. Nonetheless, because the loading operation was proceeding at such a rapid pace, Bernard had no time to consider how to stow the heavier box safely. He mechanistically hoisted it up to the shelf where he had been stacking the lobsters and tried to put it in place. In an instant, the heavier box, which contained beef tenderloins, crushed the two lighter weight lobster boxes on which Bernard had rested it, came loose, and slid from its six foot height. Bernard tried to catch the box and injured his lower back in the process.

Maersk filed an action in which it sought a declaration that any claims that Bernard might bring against it under the Jones Act were barred by the "primary duty" rule. Bernard, in turn, filed a Jones Act suit against Maersk, seeking damages for personal injury arising from defendant's negligence. The district court granted summary judgment for Maersk. It found that Bernard's Jones Act claims were barred by the "primary duty" rule. This appeal ensued.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction under 28 U.S.C. § 1333(1). We have jurisdiction under 28 U.S.C. § 1291. The district court's grant of summary judgment is reviewed de novo. *Flintkote Co. v. United States,* 7 F.3d 870, 872 (9th Cir.1993). Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material

fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Orozco v. United Air Lines, Inc.,* 887 F.2d 949, 951 (9th Cir.1989).

> If the defendant in a ... civil case moves for summary judgment ..., the judge must ask ... whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict....

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

## DISCUSSION

Under the "primary duty" rule, "a seaman-employee may not recover from his employer for injuries caused by his own failure to perform a duty imposed on him by his employment." *California Home Brands, Inc. v. Ferreira,* 871 F.2d 830, 836 (9th Cir. 1989).

> [This] result turns really not upon any question of 'proximate cause,' 'assumption of risk' or 'contributory negligence,' but rather upon the employer's independent right to recover against the employee for the non-performance of a duty resulting in damage to the employer, which in effect offsets the employee's right to recover against the employer for failure to provide a safe place to work.

*Dixon v. United States,* 219 F.2d 10, 16–17 (2d Cir.1955). In applying the "primary duty" rule,

> [t]he important thing ... is to distinguish between [the duty to avoid contributory negligence], which the law imposes upon the injured person, regardless of any conscious assumption of a duty towards the wrongdoer, and a duty which the injured person has consciously assumed as a term of his employment.... [Only t]he second is

a bar to any recovery [under the Jones Act].

*Walker v. Lykes Bros.*, 193 F.2d 772, 773 (2d Cir.1952). "The theory [behind the rule] apparently is that a momentary inattention to one's own safety . . . should not be treated as so serious a fault as the breach of a duty assumed by the employee for the protection of others, although incidentally it is for his own benefit too." *Id.* at 774.

We have held that a munitions ship's chief mate who fell through sheathing on the floor of the cargo hold could not recover against the United States for his resulting injuries. The mate's duties included overseeing safe working conditions on the vessel. He breached the duty by failing to repair sheathing that he knew was damaged and by failing to provide sufficient lighting for a person to see the damaged sheathing and step around it. In reliance upon *Walker*, we held that because the mate's injuries resulted from the breach of a duty that he had consciously assumed as a term of his employment, his Jones Act claims were barred by the "primary duty" rule. *Reinhart v. United States*, 457 F.2d 151, 153–54 (9th Cir.1972).

In *Walker* itself, a ship's roll dislodged a heavy file cabinet drawer and threw it into the leg of the ship's master. His leg was seriously injured. The master, who had a duty to keep the ship safe and seaworthy, had known for several months of the defective condition in the catches of several file cabinet drawers, but failed to have them repaired. The court held that the "primary duty" rule would bar the master's recovery under the Jones Act, if the defendant proved that the catches could have been repaired in one of the ports of call where the ship docked after the master learned of the defects. 193 F.2d at 773–75.

■ The rule is in tension with the more general admiralty principle that contributory negligence and assumption of the risk are not bars to a seaman's recovery against his employer for personal injury, but serve only to mitigate his damages. *Socony–Vacuum Oil Co. v. Smith*, 305 U.S. 424, 431–33, 59 S.Ct.

262, 266–67, 83 L.Ed. 265 (1939). As a result, the courts have cabined the reach of the primary duty rule, lest it go too far. *See* 1B Ellen M: Flynn et al., *Benedict on Admiralty* § 25, at 3–114 n. 28 (7th ed. 1993) (and cases cited).

For example, in *Dunbar v. Henry Du Bois' Sons Co., Inc.*, 275 F.2d 304 (2d Cir.), *cert. denied*, 364 U.S. 815, 81 S.Ct. 45, 5 L.Ed.2d 46 (1960), the widow of a deck hand, who drowned when the derrick on which he was riding capsized, was not barred from bringing a Jones Act suit against his employer. One of the deck hand's principal duties was to man the pumps should leakage occur. The derrick capsized because of leakage resulting from improper caulking of its hull. The deck hand had not manned the pumps because he was sleeping on duty, but he had been on duty for seventeen consecutive hours when the accident occurred. One judge determined that the "primary duty" rule did not bar the widow's claims because a jury could reasonably have found that the deck hand had not consciously assumed the duty of working seventeen hour shifts on an undermanned derrick as a term of his employment.[2] *Id.* at 305–06; *see also Noack v. American S.S. Co.*, 491 F.2d 937, 941 (6th Cir.1974) (Plaintiff, a "wiper," was not barred from recovery for injury sustained in slip and fall on an oily deck. Plaintiff, who was assigned to wipe the bilge, not the deck, had no duty to perform tasks unless they were specifically assigned.); *cf. Hudson Waterways Corp. v. Schneider*, 365 F.2d 1012, 1015–16 (9th Cir.1966) (engineer's Jones Act claims for injuries resulting from electric shock was not barred by "primary duty" rule because no evidence showed that he had an employment duty to repair or maintain the switch box that injured him).

Similarly, in *Yehia v. Rouge Steel Corp.*, 898 F.2d 1178 (6th Cir.1990), a deck hand slipped on an oily deck that he was cleaning. His employer argued that his Jones Act claims for the resulting injury should have been barred by the "primary duty" rule.

---

**2.** The other two judges just plain refused to follow the *Walker* "primary duty" rule. *Dunbar,*

275 F.2d at 306.

The deck hand's cleaning tools were a shovel (to collect salt spilled during cargo loading) and a hose (to rinse away oil spilled by a motorized reclaimer that was also used to collect spilled salt). The court held that, under the circumstances, Yehia had neither the duty nor the ability to remove all of the oil from the deck. His personal injury claims were, therefore, not barred. *Id.* at 1182–84.

And in *Joia v. Jo–Ja Serv. Corp.*, 817 F.2d 908 (1st Cir.1987), *cert. denied*, 484 U.S. 1008, 108 S.Ct. 703, 98 L.Ed.2d 654 (1988), an engineer slipped and injured himself while trying to clean an oily, water-covered engine room floor, at his employer's command. In the ensuing lawsuit, Joia's employer argued that his Jones Act claims should be barred because his injury resulted from a breach of his contractual duty to maintain a clean engine room. The court disagreed. Joia did not cause the oil and water spill in the engine room. Another employee caused it by mistakenly filling an oil tank with water. Since a third party over whom Joia had no control created the condition that injured him, the court found that the "primary duty" rule did not bar his claims. *Id.* at 909–11; *see also Johannessen v. Gulf Trading & Transp. Co.*, 633 F.2d 653, 656 (2d Cir.1980) (captain's responsibility for his crew's negligence, which might serve to bar or reduce widow's claims against employer, ceased when he passed out because he was, at that point, no longer in control of them); *McCoy v. United States*, 689 F.2d 1196, 1198–99 (4th Cir.1982) (Seaman's claims not barred where injury occurred when he slipped in oil that dripped from his clothes as he went to get equipment needed to repair a ruptured fuel line. He did not cause the fuel line problem, had to lie in oily water to make the repair and had to walk across engine room in wet, oily clothes because his assistant did not know where necessary equipment was located); *cf. Schlichter v. Port Arthur Towing Co.*, 288 F.2d 801, 806–07 (5th Cir.) (estate of drunken seaman, who drowned after falling off dark afterdeck while relieving himself, was barred from recovery against his employer because the seaman, who was temporarily in charge of the vessel and had all of its keys, had locked the lavatories, turned out the lights on the vessel and stowed and locked up the lifesaving gear), *cert. denied*, 368 U.S. 828, 82 S.Ct. 50, 7 L.Ed.2d 32 (1961).

Finally, in *Viller's Seafood Co., Inc. v. Vest*, 813 F.2d 339 (11th Cir.1987), a captain was injured when he fell from a ladder that was not properly secured to the wall he was climbing. Although the captain had a duty to maintain his vessel in a seaworthy condition, the court declined to bar his Jones Act claims under the "primary duty" rule because no evidence demonstrated that he actually knew of the unseaworthy condition before the accident. *Id.* at 342–43.

From these cases, three limiting principles can be discerned. First, the "primary duty" rule will not bar a claim of injury arising from the breach of a duty that the plaintiff did not consciously assume as a term of his employment. Second, the rule does not apply where a seaman is injured by a dangerous condition that he did not create and, in the proper exercise of his employment duties, could not have controlled or eliminated. Third, the rule applies only to a knowing violation of a duty consciously assumed as a term of employment. It does not apply to a momentary lapse of care by an otherwise careful seaman. Each limitation has relevance when we consider whether Bernard has demonstrated that there are triable issues of fact.

Bernard does not contest that as chief cook he was responsible, under normal circumstances, for loading food stores and for keeping the food lockers orderly and safe. He was not injured under normal circumstances. The loading operation on December 5, 1990 was much larger than usual. The kitchen crew had to store more food than the lockers were designed to hold. Furthermore, the military personnel made the operation run much faster than it normally did. Both Mortinger and Bernard testified that boxes were sometimes being passed too fast for the person stowing them in the locker to handle. Bernard asked for the process to be slowed, but it was not. On the record before this court, a jury could find that Bernard did not consciously assume the duties that he was performing on December 5 as a term of his employment. Specifically, it could deter-

mine that while he agreed to stow food and keep the lockers safe and orderly, he did not agree to do so while military personnel overwhelmed him with boxes being passed at so rapid a pace that he had little or no time to reflect on how or where the boxes should be stowed before he stowed them.

Bernard did not control the number of passengers on board the Bonnyman. He also did not control the amount of food that had to be stored in the ship's freezers. Furthermore, Mortinger testified that, due to the large size of the load, he took an active role in the loading operation on December 5. Mortinger personally loaded stores in the "bake box" and directed and monitored loading in other areas, including the meat locker. From these facts, a jury could infer that if anyone was in control of the pace at which the military people were passing the food boxes, it was Mortinger; and that Bernard certainly was not in control of the pace of the loading operation. Bernard testified that he asked the military people to slow down, but they did not. Mortinger's requests also had no apparent effect.

Bernard did place the heavier tenderloins box on a high shelf, from which it fell and injured him. Nonetheless, the meat locker was crowded because of the unusual amount of food that was being stored. Thus, Bernard had to stow the meat wherever he could find a place. Furthermore, the evidence would support a determination that he had to stow all boxes quickly and mechanistically because the loading operation was proceeding so quickly that there was very little time to react to one box before the next one arrived. From this record, a jury could reasonably conclude that circumstances beyond Bernard's control conspired to create the dangerous condition that resulted in his injury, and that he could not have controlled or prevented the situation in the proper exercise of his employment duties.

Finally, this is not necessarily a case like *Walker* or *Reinhart* in which the plaintiff's claim was barred because he had a duty to maintain safe conditions on a ship, or in a certain area of a ship, knew of an unsafe condition, failed to remedy it, and was eventually injured by it. A jury could decide that Bernard, at most, had a momentary lapse of care. He was mechanistically loading boxes onto shelves without much time to think about where the boxes were being stowed, or what was beneath them, because of the break-neck pace of the loading operation. He took the box, noted its weight, but was in his loading motion which just automatically followed through. He hoisted a heavy box onto a high shelf and placed it on top of two lighter boxes that could not support its weight. Before Bernard even had a chance to correct the dangerous situation, the box came loose and injured him. That sort of "momentary inattention to [his] own safety" may reduce Bernard's eventual damage recovery against his employer, but it is not a bar to recovery. *Walker*, 193 F.2d at 774.

A jury could reasonably find from the record before us that Bernard's injury was not caused by his breach of a duty that he *consciously assumed* as a term of his employment; that he did not create the dangerous condition that caused his injury; that in the proper exercise of his employment duties, he could not have controlled or eliminated the condition; and that Bernard's injury resulted from a momentary inattention to his own safety, not from a knowing breach of a duty owed under his employment agreement. For each of these reasons, and for all of them, we hold that the "primary duty" rule does not necessarily bar Bernard's Jones Act claims against Maersk for the personal injuries he incurred. Any decision must await a determination of the facts of this case at trial.[3]

REVERSED.

---

3. We hasten to emphasize that none of our statements of fact are meant to preclude the full development of the factual picture in this case. They are only a reflection of what we see in the record before us and should not be taken to establish the law of the case as to any of the facts involved here. That factual development we leave to further proceedings in the district court.