91 F.3d 121
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Kenneth J. LEWIS, Plaintiff, Appellant,
v.
PACIFIC-GULF MARINE, INC., Defendant, Appellee.
 No. 95-2212.
 United States Court of Appeals, First Circuit.
 Aug. 2, 1996.
 
 Thomas J. Boyle with whom Law Offices of Thomas J. Boyle were on briefs for appellant.
 Brian B. Kydd with whom Kneeland & Kydd was on brief for appellee.
 Before SELYA, Circuit Judge, CAMPBELL, Senior Circuit Judge, and BOUDIN, Circuit Judge.
 PER CURIAM.
 
 
 1
 Kenneth Lewis was injured while welding on the M/V NOSAC RANGER, an automobile-carrying ship. He now appeals from the judgment entered against him after a jury trial on his negligence and unseaworthiness claims against Pacific Gulf Marine, a Louisiana corporation that owned and operated the ship. He raises several objections to the jury instructions and complains of the failure to grant him a new trial. After considering all claims of error, we affirm.
 
 
 2
 The relevant events are straightforward although there is some conflict in the testimony as to details. Lewis went aboard the NOSAC RANGER as a licensed third assistant engineer on July 7, 1990. He had extensive experience in welding, but had done little welding on ships. As third assistant engineer he was expected to do some welding. In fact, he completed several welding tasks on the ship, including an overhead weld. On August 8, 1990, Lewis' supervisor, First Assistant Engineer Donald Ricciuti, assigned him the task of welding a bracket to the ceiling of the ship's workshop to steady a drill press. Lewis testified that he requested assistance when Ricciuti assigned him the job, while Ricciuti testified Lewis did not, but that he would have assigned an assistant if asked. In any event, Ricciuti did not assign anyone to help Lewis.
 
 
 3
 To weld the bracket, Lewis needed to be able to reach the ceiling. He placed a stepladder beside the drill press, climbed to the third rung, and stood with one foot on the ladder and the other on a metal bench beside it. He worked on the task for nearly three hours. He had some trouble welding, apparently either because he had set the welding machine to deliver too much current or because the vibration of the ship made it difficult to hold the welding tool the proper distance from the metal. While attempting to complete the weld, he lost his balance and fell backward to the deck some three feet below, injuring his back.
 
 
 4
 In a complaint filed in January 1993, Lewis alleged that his injuries resulted from the defendant's negligence and that the vessel was unseaworthy in several respects. As a basis for both claims, he asserted that the ship's workshop was dangerously cluttered, and that the defendant furnished him with defective or unsuitable equipment, failed to provide him with adequate help, and failed adequately to supervise him. After a five-day trial, the jury returned a verdict for the defendant. The trial judge denied a timely filed motion for a new trial.
 
 
 5
 1. On appeal, Lewis concentrates on the district judge's answer to a question the jury asked during deliberations. The jury asked: "Would lack of supervision by a superior officer constitute negligence by the defendant? E.G., not inspecting Mr. Lewis' progress." The judge heard argument from the parties and then instructed the jury that whether Ricciuti's conduct was negligent depended on the relative responsibilities of Lewis and his supervisors. The judge directed the jury to engage in a "weighing of respective duties of the parties," by considering what responsibilities Lewis assumed as a third assistant engineer, and considering whether in light of those responsibilities Ricciuti should have supervised him more carefully. Neither party objected after the instruction was given.
 
 
 6
 The general raise-or-waive rule for objections to jury instructions applies to a court's answer to a question asked by the jury during deliberations. See Smith v. Massachusetts Inst. of Technology, 877 F.2d 1106, 1109-10 (1st Cir.), cert. denied, 493 U.S. 965 (1989). Because Lewis' counsel failed to object after the new instructions were given and before the jury retired to deliberate further, we review the instruction only for plain error. Id.
 
 
 7
 In all events, Lewis' basic position is wrong. His proffered alternative answer to the question, a bare "yes," is at least potentially misleading: whether a failure to supervise an employee in the conduct of a particular task constitutes negligence depends on whether the degree of supervision was reasonable in the circumstances. Cf. Robinson v. Zapata Corp., 664 F.2d 45, 48 (5th Cir.1981). As the proffered alternative instruction was incorrect, the judge was under no obligation to give it. Parker v. City of Nashua, 76 F.3d 9, 12 (1st Cir.1996).
 
 
 8
 Lewis is also mistaken in asserting that the judge's answer constituted an instruction on the "primary duty rule," a doctrine that exonerates an admiralty defendant if the plaintiff's injury arose from the plaintiff's own breach of a contractual duty to the employer. Lewis argues that the doctrine may be applied only when an employee is in a supervisory position and that it was wrongly applied to him. Although the judge borrowed language from a decision involving the primary duty rule, see Bernard v. Maersk Lines, Ltd., 22 F.3d 903, 907 (9th Cir.1994), he did not give a "primary duty" instruction here.
 
 
 9
 Rather, the judge said that Ricciuti's duty to supervise Lewis depended on what Ricciuti could reasonably have expected Lewis to accomplish without supervision--and what Ricciuti could reasonably expect naturally depended on the scope of Lewis' duties as third assistant engineer as well as his former welding experience. The question was not, as Lewis suggests, whether Ricciuti had a duty to supervise Lewis, but rather what the scope of the duty was and whether in these particular circumstances the duty was breached. The instruction explained the problem and offered a rational framework for answering it. The instruction was certainly not plain error, if error at all.
 
 
 10
 2. Lewis also argues that the judge erred in making the following statement (the emphasis is ours) and in denying Lewis' related later motion to grant a new trial to hear contrary evidence:
 
 
 11
 If, on the other hand, you conclude that the breach of or the failure to provide supervision to a person who is an experienced welder who is brought onto the vessel to do welding, who conducts welding without direct supervision under other circumstances, is not one of those set of circumstances which deprives someone of the care or the seaworthy vessel that he's entitled to, then you'll answer this question "no".
 
 
 12
 Lewis contends that the reference to his having been hired to do welding introduced a new issue into the case on which there had been no evidence at trial, and which he had no opportunity to litigate. This claim is a perfect example of why it is necessary to explain to the judge the basis of the objection. Whether the comment was merely a slip or reflected the judge's assessment of the evidence on record, any error could easily have been cured had a timely objection to the underlined phrase brought the matter to the judge's attention.
 
 
 13
 We will assume arguendo that the failure to object does not preclude an appeal on the district court's post-verdict denial of the motion for a new trial based on newly discovered evidence. But such a motion requires, among other requisites, that the evidence "could not by due diligence have been discovered earlier by the movant" and that "it would probably change the result if a new trial is granted." Nickerson v. G.D. Searle & Co., 900 F.2d 412, 417 (1st Cir.1990); and we review the denial of a new trial under an abuse of discretion standard. Raymond v. Raymond Corp., 938 F.2d 1518, 1522 (1st Cir.1991).
 
 
 14
 Lewis' "newly discovered evidence" is simply an affidavit stating that welding is not ordinarily a contractual duty of a third assistant engineer. This evidence cannot justify a new trial because it should have been discovered before or during trial. The defendant elicited testimony to show that the position involved welding, that Lewis was a certified welder, and that Lewis represented himself as an accomplished welder when he came on board the ship. Lewis thus had clear notice that his own employment duties and welding experience were at issue.
 
 
 15
 Further, even if the evidence could not have been discovered through due diligence, it was unlikely to have led to a different result if introduced at trial. The judge instructed the jury that the scope of Lewis' duties as a third assistant engineer was a factor to consider in determining whether Ricciuti negligently supervised Lewis. The jury had before it testimony that the job involved welding and that Lewis was known to be a competent welder. Additional evidence showing that welding was not one of the central duties of an engineer would have been relevant but not outcome-determinative.
 
 
 16
 3. Lewis' other attacks on the instructions require only brief comment. Lewis objected below to the judge's failure to give two of his requested instructions on unseaworthiness. He wanted the judge to give additional instructions explaining that assigning too few people to a particular task can create an unseaworthy condition, and also that otherwise seaworthy equipment can be unseaworthy if used improperly. Cf. Johnson v. Offshore Express, Inc., 845 F.2d 1347, 1354 (5th Cir.), cert. denied, 488 U.S. 968 (1988) (manpower); Allen v. Seacoast Prods., Inc., 623 F.2d 355, 360-61 (5th Cir.1980) (equipment).
 
 
 17
 Taking the instructions as a whole, the trial judge accurately stated the law and adequately explained the plaintiff's theories of unseaworthiness. The judge repeatedly stated that lack of adequate personnel or proper equipment could constitute unseaworthiness, and explained that the manpower and equipment had to be sufficient to "permit[ ] [the jobs ordered] to be done with what we will call an adequate setup...." The jury was certainly informed that inadequate manpower or equipment could render a vessel unseaworthy. See Veranda Beach Club Ltd. Partnership v. Western Sur. Co., 936 F.2d 1364, 1384 (1st Cir.1991).
 
 
 18
 Lewis also contends that the court erred by giving an "unavoidable accident" instruction, a type of instruction that has been criticized as confusing, because it may misleadingly suggest that a plaintiff must prove fault to prevail on an unseaworthiness claim. See Lowry v. A/S D/S Svendborg, 396 F.2d 850, 853 (3d Cir.1968). But again Lewis' claim of error arises from a misunderstanding of the trial judge's instruction.
 
 
 19
 What the judge actually said was that "the mere happening of an accident does not in and of itself demonstrate that there is unseaworthiness." This merely restates the plaintiff's burden to prove the existence of an unseaworthy condition that caused the accident. The judge did not suggest that Lewis had to prove fault to recover on his unseaworthiness claim, and in fact the judge stated clearly in his instructions that liability for unseaworthiness does not depend on fault.
 
 
 20
 Finally, Lewis objects to an instruction that the jury would have to agree unanimously "as to the condition that constituted either negligence or unseaworthiness in the vessel." But only a perfunctory two-sentence argument is made in Lewis' appeal brief on this issue, and it is insufficient to preserve the point for review. United States v. Zannino, 895 F.2d 1, 17 (1st Cir.), cert. denied, 494 U.S. 1082 (1990). It is worth adding that Lewis did not object to the instruction when it was given.
 
 
 21
 Affirmed.