**Anton RIBITZKI, Plaintiff–Appellant,**

**v.**

**CANMAR READING & BATES, LTD. PARTNERSHIP, a Texas limited Partnership; Canmar (U.S.) Inc., a Texas Corp.; Piquniq Service Company, Inc., an Alaska Corp.; Piquniq Management Corporation, an Alaskan Corp. in personam; and Canmar SSDC, her gear and appurtenances, in rem, Defendants–Appellees.**

No. 96–35039.

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 10, 1996.*

Decided April 14, 1997.

As Amended on Denial of Rehearing and Rehearing En Banc June 5, 1997.

---

* Pursuant to the parties' joint motion to dispense with oral argument, this case was submitted on the briefs.

Cathleen Nelson McLaughlin, Jim M. Boardman, Brena & McLaughlin, Anchorage, Alaska, for plaintiff-appellant.

Patricia L. Zobel, Harland H. McElhany, DeLisio, Moran, Geraghty & Zobel, Anchorage, Alaska, for defendants-appellees.

Before: WRIGHT, THOMPSON and KLEINFELD, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Anton Ribitzki, a seaman employed by Piquniq Service Company, Inc., alleged he was injured when he slipped or stepped into an

open hatch while cleaning an area of the CANMAR SSDC ("the Canmar"), a drill ship. Ribitzki brought suit in the district court for damages arising from his personal injuries. The district court granted partial summary judgment, rejecting Ribitzki's claims for negligence under the Jones Act, 46 U.S.C. § 688, and unseaworthiness under admiralty law. The district court subsequently dismissed Ribitzki's remaining claims with prejudice, and entered final judgment in favor of the defendants-appellees.

Ribitzki appeals the district court's summary judgment.

We have jurisdiction under 28 U.S.C. § 1291, and we reverse.[1]

## I

## FACTS

Piquniq dispatched Ribitzki, a 48–year–old seaman, to work in the pit room of the Canmar, an oil drilling ship. The pit room contains five shale shakers used to clean drilling mud lubricant for reuse in the drilling process. The shale shakers remove shale fragments from the mud lubricant. The shakers then dump the fragments into a shale pit, which is also located in the pit room.

A hatch, two-feet by two-feet, is located in the deck of the pit room over the shale pit to allow access to the pit for cleaning. The hatch cover is flush with the deck and is part of the deck work area when the hatch is not open for cleaning purposes. There is no berm or other device where the hatch joins the deck to alert someone that the hatch is there. The hatch cover is made of diamond plate and has a recessed handle, which is also flush with the deck of the pit room. Unless Ribitzki or another seaman was cleaning the shale pit, the hatch was kept closed.

The open area of the pit room is a rectangle four-feet by sixteen-feet. Within this space is a sink, the hatch, and a guarded opening for a stairway. When open, the hatch door is at an 85 degree angle with the

deck, and is chained to prevent it from opening further.

Ribitzki's job was to clean the shale pit when the Canmar finished making a drill hole. Ribitzki cleaned the pit by spraying away lubricant mud and shale pieces with a pressurized hose. The hose is connected to a water outlet approximately sixteen feet away from the hatch. To clean the pit, Ribitzki would open the hatch, descend by ladder into the pit, and hose or shovel the shale pieces out.

After working for three months as a pit watcher on the Canmar, Ribitzki was injured while cleaning the shale pit. He was walking backward toward the hatch while uncoiling the hose to clean the pit. In uncoiling the hose, he twisted around to take a kink out of it. When he did this, he turned his back to the open hatch and his foot either slipped or he stepped into the opening. Ribitzki's rib cage struck the hatch opening, one knee hit the hatch, and the other knee hit the deck. There were no witnesses to the accident.

Over the next several days, Ribitzki's knees were sore and stiff. Later that month, two operations were performed on his right knee and one on his left knee to repair torn ligaments and cartilage.

Michael O'Connor, the Piquniq employee responsible for assigning Ribitzki to the Canmar, stated in his sworn affidavit he was "never informed of any safety concerns regarding the hatch cover or flooring of the shale pit on the Canmar." According to O'Connor, "[n]o [Piquniq] employee besides Mr. Ribitzki had an accident in the shale pit area of the Canmar."

## II

## DISCUSSION

We review de novo the district court's grant of summary judgment. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996). Summary judgment is not warranted if a material issue of fact exists for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th

---

1. Appellees move to strike several pages from the appellant Ribitzki's excerpt of record on the ground that the pages are not legitimately part of the record on appeal. *See Kirshner v. Uniden Corp. of America*, 842 F.2d 1074, 1077 (9th Cir. 1988). The motion to strike is granted.

Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). The underlying facts are viewed in the light most favorable to the party opposing the motion, here Ribitzki. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "Summary judgment will not lie if ... the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## A. Jones Act Negligence

■ To recover on his Jones Act claim, Ribitzki must establish that his employer, Piquniq, or one of its agents, was negligent and that this negligence was a cause, however slight, of his injuries.[2] *Havens v. F/T Polar Mist*, 996 F.2d 215, 218 (9th Cir.1993). The "quantum of evidence necessary to support a finding of Jones Act negligence is less than that required for common law negligence, ... and even the slightest negligence is sufficient to sustain a finding of liability." *Id.*[3]

■ The elements of a Jones Act negligence claim are: duty, breach, notice and causation. *See id.; see also Matson Navigation Co. v. Hansen*, 132 F.2d 487, 488 (9th Cir.1942); 1B Aileen Jenner et al., Benedict on Admiralty, § 21 (7th ed.1994). We consider these elements in order.

### 1. Duty

■ The employer of a seaman owes the seaman a duty under the Jones Act to provide the seaman with a safe place to work. *Glynn v. Roy Al Boat Mgt. Corp.*, 57 F.3d 1495, 1498 (9th Cir.1995); *Matson Navigation*, 132 F.2d at 488. This duty extends to providing a safe place to work on the ship of a third party over whom the employer has no control, if that is where the seaman's employer sends him to work. *See Davis v. Hill Engineering, Inc.*, 549 F.2d 314, 329 (5th

Cir.1977), *overruled on other grounds in both Culver v. Slater Boat Co.*, 688 F.2d 280 (5th Cir.1982) and *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir.1997). It is undisputed that Ribitzki was a seaman employed by Piquniq, and that Piquniq sent Ribitzki to work aboard the Canmar.

### 2. Breach

■ In granting summary judgment in favor of Piquniq, the district court concluded Piquniq had not breached its duty to Ribitzki. This determination depended on the district court's analysis of the facts Ribitzki asserted. We examine these facts de novo.

Ribitzki stated in his deposition that the pit room was an unsafe place because it provided insufficient space for him to perform his assigned task. His deposition testimony, if believed, supports this. Due to the configuration of the pit room, there was only 24 inches of deck space between the open hatch and the pit room bulkhead. It was in this constricted space immediately adjacent to the open hatch where Ribitzki performed his maneuver to unkink the hose. To get the kinks out of the hose, he turned around with his back to the open hatch and the hose above his head. When he did so, he stepped or slipped and fell into the opening. A jury could find from this evidence that the pit room in the area where Ribitzki fell was an unsafe place for him to work. Although Ribitzki could have laid the hose down and walked to where the kink was to unkink it, it was for the jury to decide whether he was negligent in choosing the method he did to unkink the hose; and, even if Ribitzki were negligent, this circumstance would not cancel the employer's negligence if it played any part at all in Ribitzki's injuries. *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 771 (9th Cir.1981).

---

**2.** 46 U.S.C.A.App. § 688(a) provides, in pertinent part:

> Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply.

**3.** We interpret this quote from *Havens* to refer to the clearly established principle of causation that, to reach a jury, a seaman must demonstrate only that his employer's negligence played any part, even the slightest, in producing his injury. *See Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 770–71 (9th Cir.1981); *see also Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 338 (5th Cir.1997) (en banc).

Ribitzki also testified that, at the time of the accident, the deck in the pit room was slippery. In his deposition, he stated he might have fallen into the hatch because there was "a little mud" near the hatch area. Although he could not say for sure whether he slipped or stepped into the hatch, he testified he was cleaning the pit because the Canmar had just finished drilling a hole, and lubricant mud on the deck made it slippery. Piquniq contends the Canmar had finished drilling the hole weeks before Ribitzki's accident and the deck area was not slippery on the day Ribitzki stepped or slipped and fell into the hatch opening. This dispute presents an issue of fact for the jury.

Given these circumstances, a reasonable jury could find that, even though Ribitzki was aware the deck of his work area was slippery with mud, and that the work area was cramped, Piquniq was negligent because it was unreasonable to require an employee to perform the task Ribitzki was assigned in the cramped, slippery quarters of the pit room area adjacent to the open hatch. *See Dempsey v. Mac Towing, Inc.*, 876 F.2d 1538, 1543–44 (11th Cir.1989) (observing that "[t]he determination of whether a deck is unreasonably slippery is a question of fact for the jury to determine, in light of all the evidence presented."); *Davila v. S/S Verc-harmian*, 247 F.Supp. 617, 619 (E.D.Va. Nov.19, 1965).

We conclude a jury could find that Ribitzki's employer, Piquniq, breached its duty to provide him a safe place to work. The next element of Ribitzki's Jones Act claim is notice.

### 3. Notice

■ An employer is only liable under the Jones Act if the employer or its agents either *knew* or *should have known* of the dangerous condition, here the slippery and cramped nature of the pit room. *Havens*, 996 F.2d at 218; *Williams v. Tide Water Assoc. Oil Co.*, 227 F.2d 791, 794 (9th Cir.), *cert. denied*, 350 U.S. 960, 76 S.Ct. 348, 100 L.Ed. 834 (1956); *Dempsey*, 876 F.2d at 1543.

Ribitzki does not contend Piquniq or its agents actually knew of the cramped and slippery nature of the pit room. *See Dempsey*, 876 F.2d at 1543; *Rice v. Atlantic Gulf & Pacific Co.*, 484 F.2d 1318, 1320 (2d Cir. 1973). Ribitzki argues, instead, that Piquniq

should have known of these conditions. Ribitzki contends knowledge of these conditions and their danger can be imputed to Piquniq in two ways: through the Canmar's employees, and by constructive notice.

There is no evidence that the Canmar's employees were the agents of Piquniq for the purpose of imputing knowledge of the alleged dangerous conditions. *Cf. Craig v. Atlantic Richfield Co.*, 19 F.3d 472, 477–78 (9th Cir.), *cert. denied*, 513 U.S. 875, 115 S.Ct. 203, 130 L.Ed.2d 133 (1994) (seaman employed by ship, but injured by independent contractor while working aboard ship; factors to consider in determining whether independent contractor could be the agent of the shipowner-employer of the injured employee-seaman). Piquniq had no ownership interest in the Canmar, was not in a joint venture with it or its owners, and exercised no control over operations of the ship or its employees. Piquniq was an independent contractor. It had its own employees, of which Ribitzki was one. There was no relationship between the Canmar and Piquniq except that of shipowner and independent contractor. Knowledge of the Canmar employees is not imputable to Piquniq.

■■ Piquniq, however, could be charged with constructive notice if, in the exercise of reasonable care, Piquniq ought to have known about or discovered the alleged dangerous conditions of the pit room. *See Vargas v. McNamara*, 608 F.2d 15, 20 (1st Cir. 1979); *Perry v. Morgan Guaranty Trust Co. of New York*, 528 F.2d 1378, 1379 (5th Cir. 1976). This implies a duty of reasonable inspection, and this duty extends to an employer who sends employees to work aboard a third party's vessel. *Davis*, 549 F.2d at 329 (holding that Jones Act employer had a responsibility to inspect a third party's vessel "to take precautions in order to provide its employees with a safe working place"); *see Shenker v. Baltimore & Ohio R.R. Co.*, 374 U.S. 1, 8, 83 S.Ct. 1667, 1672, 10 L.Ed.2d 709 (1963) (holding that, under the FELA, a railroad employer had a responsibility to inspect the railroad cars of a third party, over which the employer lacked control or supervision, if it sent its employees to service the third

party's railroad cars). If, by a reasonable inspection, Piquniq could have discovered the alleged dangerous condition of the pit room, Piquniq would be charged with knowledge of that condition.

The size and configuration of the pit room were permanent conditions. A jury could find that a reasonable inspection would have disclosed that the area was not reasonably safe for a seaman to perform the task of cleaning the shale pit. Whether a reasonable inspection would have disclosed that the pit room deck would be slippery during or after drilling operations, and as a result dangerous, was also a question for the jury.

There is at least a triable issue of fact as to whether Piquniq should have known of the alleged unsafe condition of the pit room.

### 4. Causation

■ "[T]he test of a jury case [on the question of causation] is simply whether the proofs justify ... that employer negligence played any part, even the slightest, in producing the injury ... for which damages are sought." *Lies,* 641 F.2d at 771 (quoting *Rogers v. Missouri Pacific Railroad Co.,* 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957)). This test, often described as a featherweight causation standard, allows a seaman to survive summary judgment by presenting even the slightest proof of causation.

The evidence, viewed in the light most favorable to Ribitzki, is that he was required to work in a cramped, slippery area where there was an open hatch, flush with the deck and unguarded by any berm or warning device. While performing his assigned task, he stepped or slipped and fell into the open hatch. Ribitzki has come forward with sufficient evidence at least to create triable issues of fact on the elements of duty, breach and notice. The causation question is whether Piquniq's negligence, if indeed that should be established at trial, "played any part, even the slightest, in producing" Ribitzki's injuries. We hold there is at least a triable issue of fact that it did.

Piquniq argues Ribitzki was contributorily negligent in that he approached an open

hatch backwards while twisting the hose above his head. This may be so, but it is a question of fact for the jury. Ribitzki has come forward with sufficient facts to establish "that the conclusion may be drawn that the negligence of [his] employer played [some part] ... in [his] injury." *Lies,* 641 F.2d at 771 (quoting *Rogers,* 352 U.S. at 506, 77 S.Ct. at 448). So long as the employer's negligence played some part in Ribitzki's injury, it does not matter in ruling on a motion for summary judgment that a jury upon hearing Ribitzki's case might also attribute his injury to other causes, including his contributory negligence. *Id.*

We conclude Ribitzki presented sufficient evidence to survive summary judgment on his Jones Act negligence claim against his employer. We next consider Ribitzki's unseaworthiness claim against the vessel and its owners.

### B. Unseaworthiness

■ A shipowner has an absolute duty to furnish a seaworthy ship. *Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 549, 80 S.Ct. 926, 932, 4 L.Ed.2d 941 (1960). A seaworthy ship is one reasonably fit for its intended use. *Id.* at 550, 80 S.Ct. at 933. The shipowner's actual or constructive knowledge of an unseaworthy condition is not essential to its liability. *Id.* at 549, 80 S.Ct. at 932.

■ A vessel's condition of unseaworthiness may arise from any number of circumstances, including an insufficient number of men assigned to perform a shipboard task, or the existence of a defective condition, however temporary, on a physical part of the ship. *Usner v. Luckenbach Overseas Corp.,* 400 U.S. 494, 499, 91 S.Ct. 514, 517–18, 27 L.Ed.2d 562 (1971).

■ To establish a claim for unseaworthiness, Ribitzki must establish: (1) the warranty of seaworthiness extended to him and his duties; (2) his injury was caused by a piece of the ship's equipment or an appurtenant appliance; (3) the equipment used was not reasonably fit for its intended use; and (4) the unseaworthy condition proximately caused his injuries. *Gebhard v. S.S. Hawai-*

*ian Legislator,* 425 F.2d 1303, 1310–12 (9th Cir.1970); *Faraola v. O'Neill,* 576 F.2d 1364, 1366 (9th Cir.1978). Ribitzki satisfied the first two prongs of the test because he was a seaman injured by stepping or slipping into an open hatch attached to the Canmar.

▮▮▮ Ribitzki argues the Canmar's pit room was not reasonably fit for its intended use for two reasons: it was insufficiently manned, and it was unfit for the task he was required to perform there. The district court rejected both of these contentions.

The district court did not err in rejecting Ribitzki's insufficient manning claim. Our reading of the record indicates that Ribitzki failed to produce any evidence demonstrating that the pit room was insufficiently manned. *Cf. Andrews v. Chemical Carriers, Inc.,* 457 F.2d 636, 639 (3rd Cir.), *cert. denied,* 409 U.S. 874, 93 S.Ct. 120, 34 L.Ed.2d 126 (1972) (seaman introduced evidence that "it was the established custom and practice in the coastal trade for a vessel to carry all four mates" instead of the three it carried when the seaman was injured); *Waldron v. Moore–McCormack Lines, Inc.,* 386 U.S. 724, 725, 87 S.Ct. 1410, 1411, 18 L.Ed.2d 482 (1967) (seaman introduced expert evidence "to the effect that 3 or 4 men rather than 2" were required for the job).

Ribitzki did produce evidence, however, which if believed would permit a reasonable jury to find that the pit room was unfit for the task of cleaning the shale pit. Although Ribitzki was not entitled to a perfect work space, he was entitled to one which was neither unreasonably cramped nor unreasonably slippery. *See Lieberman v. Matson Navigation Co.,* 300 F.2d 661, 662 (9th Cir. 1962) (stating that a seaman is not entitled to a deck that is not slippery, but only to one that is not unreasonably slippery); *Rice,* 484 F.2d at 1321 (holding that unseaworthiness exists only when slick condition creates such a condition of slipperiness that the area of the ship was no longer reasonably fit for its intended use by the crew).

Viewing the evidence in the light most favorable to Ribitzki, the pit room was cramped and slippery. The question whether it was unreasonably unsafe for its intend-

ed use, and therefore unseaworthy, is a question of fact for the jury.

▮▮▮ The next issue is causation. Causation is established by showing that the unseaworthy condition was a substantial factor in causing the injury. *Faraola,* 576 F.2d at 1366.

In his deposition, Ribitzki testified his injury was caused by the slippery deck and cramped condition of the pit room. A reasonable jury could find, viewing the evidence in the light most favorable to Ribitzki, that he slipped and fell into the open hatch as a consequence of the slippery deck, or that he stepped into the open hatch as a consequence of the cramped conditions of the pit room. *See Lieberman,* 300 F.2d at 662 (stating that issue of whether unseaworthiness was a proximate cause of an accident is a question of fact).

Ribitzki presented sufficient evidence in support of his unseaworthiness claim to survive summary judgment.

### C. Primary Duty Rule

▮▮▮ The appellees argue that Ribitzki's claims for negligence under the Jones Act, and for unseaworthiness, are barred by the primary duty rule. Under this rule, a seaman may not recover for an injury caused by his own failure to perform a duty imposed upon him by his employment. *Reinhart v. United States,* 457 F.2d 151, 154 (9th Cir. 1972). According to the appellees, Ribitzki's injury was caused by his own failure to properly clean the pit room area, and as a result the primary duty rule bars any recovery. We disagree.

▮▮▮ In *Bernard v. Maersk Lines, Ltd.,* 22 F.3d 903 (9th Cir.1994), we defined three principles that limit the application of the primary duty rule. *Id.* at 907. First, the rule does not bar a claim of injury arising from a breach of a duty that the plaintiff did not consciously assume as a term of his employment. *Id.* "Second, the rule does not apply where a seaman is injured by a dangerous condition that he did not create and, in the proper exercise of his employment duties, could not have controlled or eliminated." *Id.* "Third, the rule applies only to a

knowing violation of a duty consciously assumed as a term of employment." *Id.*

 We need not discuss all three of these possible applications. The second is sufficient to preclude application of the primary duty rule. A jury could find that Ribitzki sustained his injuries as a result of dangerous conditions aboard the Canmar. These conditions were the pit room's alleged slippery deck caused by the lubricant mud used in the drilling operation and the pit room's cramped area. Ribitzki did not create these conditions and he could not have controlled or eliminated them.

## III

## CONCLUSION

The district court's grant of summary judgment against Ribitzki on his Jones Act negligence and unseaworthiness claims is reversed. This case is remanded to the district court for further proceedings.

REVERSED and REMANDED.