116 F.3d 482
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Yelena ALEKSANDROV, Individually and as Special
Administrator of the Estate of Sergey V. Aleksandrov; Ilona
Aleksandrov by her Guardian Ad Litem Yelena Aleksandrov;
Edwin Aleksandrov by his Guardian Ad Litem Yelena
Aleksandrov; and Vazgen Asriyants, an Individual,
Plaintiffs-Appellants,
v.
CHEVROLET MOTOR DIVISION; Chevrolet Motor Division dba Geo
Metro; Geo Metro; General Motors Corporation, A
Delaware Corporation; Does 1-1000
Defendants-Appellees.
 No. 96-55276.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 8, 1997
Decided June 4, 1997.
 
 1
 Appeal from the United States District Court for the Central District of California, No. CV 94-8657-TJH; Terry J. Hatter, Jr., District Judge, Presiding.
 
 
 2
 Before: RYMER and THOMAS, C.J.; PANNER, D.J.*
 
 
 3
 MEMORANDUM**
 
 
 4
 Plaintiffs Yelena Aleksandrov, administrator of the estate of her deceased husband Sergey Aleksandrov, her two minor children, and her father, (collectively "Aleksandrov") bring this action against the Chevrolet Motor Division, dba Geo Metro, of General Motors Corporation, and Does 1-1000 (collectively "GM"), alleging California state claims of products liability (strict liability, negligence, breach of warranty), wrongful death, and loss of consortium. The deceased died in a single vehicle accident while driving a 1990 Geo Metro ("the Metro") manufactured by GM. Aleksandrov contends that a design defect in the Metro's hood latch, causing the hood to fly open, and a failure to warn of this defect, proximately caused decedent's death. The district court granted GM's motion for summary judgment. We affirm.
 
 BACKGROUND
 
 5
 Decedent, driving the Metro alone, at night, and with a blood alcohol content of 0.21%, was killed almost instantly when his car wandered into the median and crashed into a concrete planter box. There were no witnesses. The Metro was totaled and was not preserved for inspection or testing.
 
 
 6
 Three months later, GM issued a notice of recall, received by vehicle owner Asriyants, indicating that a defect existed in "certain 1989-93 Geo Metro model vehicles." The notice continued:
 
 
 7
 Mislocated hood striker assembly attachment spot welds on some of these vehicles cause cracks to initiate on the hood inner panel. If a crack occurs, upon closing the hood, the hood striker assembly may not properly engage the hood latch. This could result in a hood fly-up while the vehicle is in motion, and could cause a vehicle crash without prior warning.
 
 
 8
 In November 1992, approximately eleven months before the accident, David Boga, the owner of a 1989 Geo Metro who lives in Mississippi, filed a report with the National Highway Traffic Safety Administration's Auto Safety Hotline. There, he complained that since the purchase of his vehicle, he had observed the hood raising and falling slightly and vibrating at speeds higher than twenty-five miles per hour. He also commented on what he considered a defective hood latch. He indicated that he had notified GM about this in February 1992. Boga's report to GM complains about a bending hood latch causing the hood to flap up and down. Although Boga repaired that problem himself, he later experienced an incident in which the hood on his Metro flew open while driving.
 
 
 9
 In opposing GM's motion for summary judgment, Aleksandrov relied on the recall notice, Boga's complaint to GM, and Boga's notice to the Auto Safety Hotline to show that a defect existed and that it was the proximate cause of decedent's death. Aleksandrov also relied on photographs of the accident scene, photographs of decedent and his family, Boga's declaration, partially blacked out copies of Japanese engineering studies, a statement by Aleksandrov's counsel noting the existence of other hood-related complaints, and the police and coroner reports.
 
 STANDARD OF REVIEW
 
 10
 We review the district court's grant of summary judgment de novo. Ribitzki v. Canmar Reading & Bates. Ltd. Partnership, 111 F.3d 658, 661 (9th Cir.1997). Summary judgment is not warranted if a material issue of fact exists for trial. Id. at 661-62. We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996).
 
 DISCUSSION
 
 11
 Each cause of action in this case requires Aleksandrov to prove that either a design defect or a failure to warn proximately caused decedent's death. See, e.g., Brown v. Superior Court, 44 Cal.3d 1049, 1070, 751 P.2d 470, 245 Cal.Rptr. 412 (1988)(generally, in breach of express or implied warranty actions, plaintiff must show that defendant caused the damages suffered); Torres v. Xomox Corp., 49 Cal.App. 4th 1, 15, 16, 56 Cal.Rptr.2d 455 (1996)(in strict liability design defect or failure to warn claims, plaintiff must show that defective design or failure to warn was legal cause of injury)(citing Soule v. General Motors Corp., 8 Cal.4th 548, 882 P.2d 298, 34 Cal.Rptr.2d 607 (1994); Campbell v. General Motors Corp., 32 Cal.3d 112, 119, 649 P.2d 224, 184 Cal.Rptr. 891 (1982)(plaintiff must establish prima facie case of causation)).
 
 
 12
 Before the district court, GM maintained that there was insufficient evidence to create material issues of fact on the questions of design defect and causation. The district court agreed with GM and so do we.
 
 A. Recall Notice
 
 13
 Recall notices can be relevant evidence in design defect cases. Longenecker V. General Motors Corp., 594 F.2d 1283, 1286 (9th Cir.1979); Fed.R.Evid. 403. However, the recall notice in Longenecker directly advised the car's owner of the need for repair in that particular car. Here, in contrast, the notice states only that some Metros may have a hood latch defect. Thus, the notice creates no material issues of fact as to whether there was a defect in this particular Metro. It also provides no evidence as to whether a defect, if there was one, proximately caused decedent's death.
 
 B. Boga's Declaration and Complaints
 
 14
 Boga's declaration and his complaints to GM and the Auto Safety Hotline relate only to his 1989 Metro. He recites no experience, training, or education in automobile design, engineering, or manufacture demonstrating the expertise required to render an opinion on a design defect in decedent's Metro. See Fed.R.Evid. 702. His own hood latch problem, the raising and lifting of his hood at moderate speeds, and a single incident of his hood flying open, are insufficient to show that the hood on decedent's Metro opened in a similar fashion.
 
 
 15
 Additionally, because Boga neither witnessed this accident nor inspected the Metro, he lacks any firsthand knowledge or observation of what occurred. See Fed.R.Evid. 701. Because there is no evidence of Boga's experience, training, or education in automobile accident reconstruction, he lacks the expertise required to render an opinion on whether the hood opened or raised before impact. Fed.R.Evid. 702.
 
 C. Photographs
 
 16
 Boga suggests that the photographs, which show the hood open after impact, prove that the hood opened or was raised before impact because they show the hood with a bend similar to one in Boga's car after his hood flew open. For the reasons stated above, Boga lacks sufficient qualification to render such an opinion.
 
 
 17
 Aleksandrov's counsel offers his own photographic interpretation analysis. Like Boga, he does not qualify as an expert under Rule 702.
 
 
 18
 In contrast, GM relied on the deposition testimony of Stephen J. Samoncik, a San Diego police officer who responded to the scene of the accident. Samoncik has performed traffic investigations for ten years and has investigated more than 300 serious accidents, more than 100 fatality accidents, and between 500 and 1,000 single vehicle collisions. He has previous experience testifying as an accident reconstruction expert.
 
 
 19
 Based on photographs of the Metro, Samoncik concluded that the hood opened after impact. He noted that certain dents appearing in the photographs would not have existed had the hood opened before impact. In particular, he stated that a dent in the leading edge of the hood matched a mark on the planter box. If the hood had opened before impact, the dent would not have been there. He further explained that the position of the hood after impact was consistent with it being "pushed back and spun around" from impact.
 
 
 20
 D. Japanese Engineering Studies These documents are largely blacked out and many of them are in Japanese. Despite being granted an extension of time, Aleksandrov never submitted complete, translated copies of the documents.
 
 E. Reports of Other Hood-Related Complaints
 
 21
 To rely on evidence of other accidents to prove a design defect, Aleksandrov must show that there is a "substantial similarity" between the products in question. Cooper v. Firestone Tire & Rubber Co., 945 F.2d 1103, 1105 (9th Cir.1991). Because Aleksandrov never submitted the actual documents concerning the hood-related complaints, the record reveals no details regarding these incidents. Thus, Aleksandrov failed to show a "substantial similarity" between the products in question. Even if such a similarity existed, however, the other incidents, while relevant to the issue of a design defect, would not be relevant to whether such a defect caused this particular accident.
 
 F. Police and Coroner Reports
 
 22
 The police and coroner reports contain no information as to whether the hood opened before impact. However, the fact that there were no skid marks, as noted in the police report, suggests that the hood did not open before impact.
 
 
 23
 In summary, Aleksandrov's evidence was insufficient to overcome summary judgment. Aleksandrov's request for sanctions against GM is denied.
 
 
 24
 AFFIRMED.
 
 
 
 *
 Honorable Owen M. Panner, Senior Judge, United States District Court for the District of Oregon, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3