Jamey H. **SHERFY**, Plaintiff,

v.

**BARGE MARIN HORIZON**, No. 651632, her engines, tackle, apparel, furniture, etc., in rem, Tug Marin Twilight, No. 614861, her engines, tackle, apparel, furniture, etc., in rem, Sea–Land Service, Inc., in personam; Marin Tug & Barge, Inc., in personam; and Gary Winston, individually, in personam; Defendants.

**and Related Cross–Actions.**

**No. C 98–04582 WHA.**

United States District Court, N.D. California.

Nov. 30, 1999.

---

## ORDER DENYING SUMMARY JUDG-MENT MOTION BY BARGE MA-RIN HORIZON

ALSUP, District Judge.

### INTRODUCTION

In this maritime case, the general issue concerns allocation of the responsibility for injuries sustained by a seaman who fell while descending a jacobs ladder from one vessel to his own. On the narrower question posed by this motion for summary judgment, the seaman's vessel, sued *in rem*, seeks a declaration that it was seaworthy and that it cannot be deemed otherwise merely because the jacobs ladder may have been improperly rigged by the crew of the other vessel. Viewing the summary judgment record most favorably to plaintiff, as must be done on summary judgment, the Court holds that a jury could reasonably find that the seaman's own vessel was unseaworthy in such circumstances. Under the warranty of seaworthiness, every vessel owes a non-delegable duty to its crew to provide safe means of ingress and egress. The means used here was not safe by reason of a defective condition or so a jury could reasonably find. It does not matter that the defective condition was caused by the crew of the other vessel or that it was merely a temporary condition. The motion also seeks a ruling that the barge may recover full indemnity from the owner of the vessel that rigged the ladder. This, too, is denied, for reasons explained below.

### STATEMENT

On the morning of the accident, a container cargo ship was moored starboard side to the dock in Oakland. It needed fuel. A tug and barge arrived to provide the fuel. The barge was made fast to the port side of the cargo ship, side by side. The tug then moved from the stern to the port side of the barge and began tying up.[1]

Eugene A. Brodsky, Brodsky Baskin & Miller Inc., San Francisco, CA, for Jamey H. Sherfy.

Forrest Booth, Edward M. Bull, Sloan C. Bailey, Booth Banning LLP, San Francisco, CA, for the Barge Marin Horizon, Marin Tug and Barge, Gary Winston.

Eric M. Danoff, James J. Tamulski, Keith R. Gillette, Kaye Rose & Partners LLP, for San Francisco, CA, for Sea–Land Service Inc.

1. The barge is the *Barge Marin Horizon*. The cargo ship is the *Sea–Land Enterprise,* operated by Sea–Land Service, Inc. The barge-tug operator is Marin Tug & Barge, Inc. The actual owner of the barge is Zidell Marine Corp., which chartered it to Marin Tug & Barge, Inc. At all relevant times, Marin Tug & Barge was the owner pro hac vice and operator of the barge.

Plaintiff James Sherfy was the barge tankerman in charge of the fueling operation. He arrived at the dock by car that morning. To do his job, Sherfy needed to board the barge. To reach the barge, Sherfy first boarded the cargo ship and went to its port side. There, the crew of the cargo ship had rigged a jacobs ladder between the vessels. The jacobs ladder, supplied by the cargo ship, was a simple rope ladder with plastic rungs fifteen inches in length and 4.25 inches in width. It was rigged over the port bulwark rail and was unfurled down to the barge, where it lay slack on the deck. In between, the ladder was draped over the forward spring line, one of the four mooring lines between the cargo ship and the barge.

Sherfy started his descent. During his descent, the ladder twisted, arguably due to a tightening of the forward spring line as the two vessels moved in the water. That is one permissible view of the evidence. Sherfy thought the ladder was falling. Perhaps it did for a foot or so. A rung may also have hung up on the forward spring line and then popped free. Sherfy fell off and was hurt. Sherfy then sued the barge *in rem*, the tug *in rem*, the owner of the tug (which was also the charterer of the barge), and the owner of the cargo ship, among others.

This motion by the barge concerns the liability of the barge. If the barge is liable *in rem* to plaintiff, it can only be on a theory of breach of the warranty of seaworthiness, the liabilities for maintenance and cure having been otherwise addressed. Seeking summary judgment against Sherfy, the barge argues that the barge itself may not be held unseaworthy solely by reason of a jacobs ladder provided and rigged by the crew of the cargo ship.

## ANALYSIS

Under the warranty of seaworthiness, the barge owed a duty to all its crew (and the tankerman was undisputedly a crew member) to provide a seaworthy vessel. Negligence did not matter. The liability was strict. The Supreme Court has made

clear that the warranty extended to certain appliances beyond the ship itself:

> But our cases have held that the scope of unseaworthiness is by no means so limited [to the ship itself]. A vessel's condition of unseaworthiness might arise from any number of circumstances. Her gear might be defective, her appurtenances in disrepair, her crew unfit. The number of men assigned to perform a shipboard task might be insufficient. The method of loading her cargo, or the manner of its stowage, might be improper. For any of these reasons, or others, a vessel might not be reasonably fit for her intended service.

*Usner v. Luckenbach Overseas Corp.,* 400 U.S. 494, 499, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971) (footnotes omitted).

A number of lower court decisions have uniformly held that a vessel must provide its seamen with safe means for ingress and egress and that this duty is non-delegable. One good example involved the gangway in *Reyes v. Marine Enterprises, Inc.,* 494 F.2d 866, 869 (1st Cir.1974) (footnotes omitted):

> The gangway from which Romero Reyes fell was owned and controlled by a concern we shall call Molinos. It did not belong to the barge or its owner. Suspended from a tower on pilings next to the dock, it could be raised or lowered by cables attached to the tower. The court concluded that the injury was caused by "pierside equipment attached to the pier based structure and not part of the ship or its appurtenances and that there was no member of the crew of the ship directing the plaintiff nor having any control over the plaintiff or his activities at the time." Were the vessel owner's duty determined by ownership of the gangway, we would agree with the district court. It is undisputed that a smaller portable structure was the only structure in the nature of a gangway actually belonging to the barge, and it was not in use at the time of the accident. The apparatus from which plaintiff fell was the regular means of boarding the leaving the vessel.

The seaworthiness warranty is not, however, limited to gear "owned" by the shipowner, and while the phrase "equipment appurtenant" to the vessel suggests equipment "belonging" physically to the vessel, it may, and in this case does, include equipment vital to the vessel's mission that does not accompany it while at sea. "Seaworthiness" comprehends the owner's duty to supply his crew with a suitable ship and equipment, and this includes providing them with a suitable means to board and disembark. The duty thus extends to the gangway by whomever supplied, owned or controlled. A crewman injured by an unfit hence "unseaworthy" gangplank may recover against the vessel's owner.

While some decisions have found the use of a jacobs ladder to be seaworthy, other decisions have found the opposite. The results turned on the facts and circumstances. *Cf. Bilger v. Maritime Overseas Corp.,* 304 F.Supp. 1024, 1026 (N.D.Cal. 1969) with *Pedersen v. United States,* 224 F.2d 212, 214–15 (2d Cir.1955).[2]

Here, the barge argues that the jacobs ladder itself was perfectly fit, and so it would appear. At most, the barge argues, the ladder was carelessly rigged as a result of an isolated act of negligence. Such carelessness does not constitute, it urges, unseaworthiness of the ladder or the barge. While there are themes in the law that seem to support the barge's argument, the actual holdings of the cases run against the barge.

■ The law is that even a temporary condition can render a vessel unseaworthy. In *Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941

(1960), a ship's rail had been temporarily covered with slime and fish gurry for a distance of ten to twelve feet, after a fish unloading operation. The district court instructed the jury that the slime and gurry had to have been on the rail long enough for the shipowner to learn about it and remove it. The court of appeals affirmed. The Supreme Court reversed, stating in part (*id.* at 549–50, 80 S.Ct. 926):

> [T]he decisions of this Court have undeviatingly reflected an understanding that the owner's duty to furnish a seaworthy ship is absolute and completely independent of his duty under the Jones Act to exercise reasonable care [citations omitted].
>
> There is no suggestion in any of the decisions that the duty is less onerous with respect to an unseaworthy condition arising after the vessel leaves her home port, or that the duty is any less with respect to an unseaworthy condition which may be only temporary. Of particular relevance here is *Alaska Steamship Co. v. Petterson,* [347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798 (1954)] *supra.* In that case the Court affirmed a judgment holding the shipowner liable for injuries caused by defective equipment temporarily brought on board by an independent contractor over which the owner had no control. That decision is thus specific authority for the proposition that the shipowner's actual or constructive knowledge of the unseaworthy condition is not essential to his liability. That decision also effectively disposes of the suggestion that liability for a temporary unseaworthy condition is different from the liability that attaches when the condition is permanent. [Footnote omitted.]

2. *Flunker v. United States,* 528 F.2d 239 (9th Cir.1975), is not to the contrary. As explained later in the text, the main issue in that decision was whether to allow indemnity from a third party. The plaintiff's suit had already been settled and the issue remaining was allocation of the settlement. At the end of its lengthy opening, the Ninth Circuit observed that attorneys' fees for defending the unseaworthiness claim need not be indemnified because "any unseaworthiness of the Navy's launch would not have rendered [the seaman's ship] unseaworthy." While it is true that the Navy launch in that case was the means to go from ship to shore, there was no issue concerning any defective condition in ladders or gangways used to transfer between the two vessels. *Flunker,* moreover, did not consider the issues of ingress and egress and seaworthiness.

Thus, a temporary unseaworthy condition may be just as culpable as a permanent one. It matters not that the owner has no notice of or time to repair it. Nor, as already stated, does it matter that strangers rather than the owner's crew was at fault, inasmuch as the duty non-delegable.

Contrary to the barge's argument, *Usner v. Luckenbach Overseas Corp., supra*, did not erase *Mitchell*. In *Usner*, an isolated and personal act of negligence by a fellow worker did not constitute unseaworthiness. Time and again, the winch operator in *Usner* lowered bundle after bundle of cargo, all safely, until on one occasion, the operator did not lower the cargo far enough. Upon a signal to lower further, the operator overreacted and lowered the bundle too far and too fast, striking the plaintiff. This one instance of random and isolated carelessness stood in contrast to many safe operations of the winches before and after. That event, the Court said, was not a "condition of the ship" but was an "isolated, personal negligent act." The injury occurred during the act of negligence itself.

The Ninth Circuit has held that the critical difference between the "isolated negligence" in *Usner* and the "temporary condition" in *Mitchell* is that the "condition" begins as soon as the negligent act ceases:

> This is not a case where the negligent act had terminated and an appliance was left in an unsafe condition. As the trial court observed, the locking pin does not remain in a fixed position during stevedoring operations, but must be moved in and out whenever it becomes necessary to shift gears. It may not be said that each time a winch driver removes the pin to shift gears he thereby renders the winch unseaworthy, for in order to operate a winch reasonably for its intended use, it is necessary to shift the gear from time to time. To leave the pin out at the termination of the work would be proper and would not result in an unsafe condition. Plaintiff's injury was sustained by the negligent use of a seaworthy appliance at the very moment of injury.

*Billeci v. United States*, 298 F.2d 703, 706 (9th Cir.1962). Or, as the Fifth Circuit has said, once the act of negligence has passed, it can leave behind a tort lying in wait. *Chisholm v. Sabine Towing & Transp. Co., Inc.*, 679 F.2d 60, 62 (5th Cir.1982).

■ So too here. Viewing the summary judgment record in a light most favorable to the plaintiff and even without consideration of evidence involving the movement of the tug, churning of the waters, and notice by its captain, a jury could reasonably find that any negligence and acts of the cargo ship's crew had ceased, leaving in place a dangerous condition—an accident waiting to happen—rendering means of ingress to the barge unseaworthy.[3] *See*

---

3. The barge insists that eyewitnesses ruled out any movement by the spring line, the ladder or the barge. The record cited does not support this conclusion and actually contradicts it. Taking each citation in order, the plaintiff's deposition is no aid to the barge. The closest testimony by plaintiff merely acknowledged that he did not notice whether or not the mooring line moved or was the cause of the ladder falling (Dep.155). Mr. Cary's deposition excerpt merely stated what he observed *after* the accident (Dep.200–01). Mr. Romero's deposition excerpt, while billed as "more informative" (Reply Br. 6), actually stated, once again, that he did not know whether or not the barge moved. Mr. Romero was watching Mr. Sherfy and "I couldn't see whether the ladder moved or not" (Dep.30–31). Mr. Capizano's deposition excerpt actually addressed only the trajectory of the fall (Dep.17–18). Then he stated that he did not see the ladder move at all (Dep.25, 55). This did not fully answer the question. What is missing is solid evidence that the witness was paying attention to the issue of ladder movement and can say, based on direct observation, that it did not move. A jury could find, based on the inconclusive snippet, that the witness was paying attention to the man on the ladder, not the ladder and the spring line. The excerpt from Lin Bartee, the captain of the tug, states "I didn't see the barge move at all, okay" and that he was "able" from the wheelhouse to see the barge (Dep.112). That is not, however, the same as testifying, flat-out, that he was actually looking at the barge at the time of the accident (as

*Ribitzki v. Canmar Reading & Bates, Ltd. Partnership,* 111 F.3d 658, 665 (9th Cir. 1997).

\*　\*　\*　\*　\*　\*

■ A second issue concerns indemnity. The barge seeks a ruling that if it is liable, then it is entitled to complete indemnity from the owner of the cargo ship whose crew rigged the ladder. The normal allocation rule in admiralty is contribution according to comparative fault. *United States v. Reliable Transfer Co.,* 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975) (collision case); *McDermott, Inc. v. Am-Clyde,* 511 U.S. 202, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994) (non-collision case). There is a limited exception, however. A few months after *Reliable Transfer* was decided, the Ninth Circuit held that a vessel liable for a seaman's injury sustained while on an unseaworthy ship-to-shore launch operated third-party could recover full indemnity from the third-party operator. *Flunker v. United States,* 528 F.2d 239 (9th Cir.1975). This holding was based on the remnants of a doctrine of indemnity that had flourished prior to the *Reliable Transfer* rule of comparative fault and prior to certain legislative changes to the rules governing longshore and harbor workers. *See Ryan Stevedoring Co. v. Pan–Atlantic S.S. Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). The indemnity remnants survived those changes, said the Ninth Circuit, and still allowed a ship derivatively found unseaworthy or liable for maintenance and cure to recover indemnity from a third-party cause. Later, however, the Ninth Circuit narrowed *Flunker* to deny indemnity where the ship operator is negligent. *Knight v. Alaska Trawl Fisheries, Inc.,* 154 F.3d 1042, 1046 (9th Cir.1998).

■ In the present case, a jury could reasonably find that the barge-tug operator was negligent, viewing the summary judgment record most favorably to the cargo ship parties and plaintiff. There is evidence that the tug captain moved the tug just prior to plaintiff's accident and may have churned the waters, causing the vessels to move to and fro, tightening and slackening the mooring lines by turns, and thus moving the ladder. The tug captain was aware of the placement of the ladder over the forward spring line. Such a finding of negligence would cut off any indemnity rights under *Flunker/Knight.*

*Flunker* also noted that *Ryan* had involved a contract between the shipowner and the contractor stevedore and had read into the contract for services a warranty of workmanlike performance, the breach of which authorized indemnity. *Flunker* extended the indemnity to circumstances "where there is no contractual relationship" but where there was a pre-existing relationship and course of dealing. Such was the case in *Flunker* when the launch operator had traditionally provided ship-to-shore ferrying services for all vessels at

---

opposed to having an obstructed view had he chosen to look) and that, based on direct observation, could say there was no movement. Finally, the excerpt of Jackie Peralta, cited by the barge, tends to prove the opposite point made by the barge. She stated that the ladder was "not flat" but was "moving away from one side of the ship and then the other." It was "wobbly," like it was "twisting" (Dep.17). Thus, the barge's own citations are weak at best and, in the case of Mrs. Peralta, point in the opposite direction. The counter declaration by Expert Captain Calvin J. Bourke would support a finding that the spring line first went slack and then tightened, flexing against the ladder and causing it to twist (Decl.2–3). The objection to this latter testimony is overruled.

The barge also asserts that plaintiff is barred from recovery by the Primary Duty Rule, alleging that plaintiff was the senior-most seaman for the barge and was responsible for providing himself with safe ingress. Among other things, however, a jury could reasonably find on this record that plaintiff was not skilled or trained to rig jacobs ladders or to arrange for safe ingress. *See Bernard v. Maersk Lines, Ltd.,* 22 F.3d 903, 907 (9th Cir.1994). Of course, it is possible that plaintiff Sherfy was negligent. This motion does not involve that issue. Rather, this motion involves allocation of certain aspects of the responsibility not assigned to plaintiff.

anchor in the bay. 528 F.2d at 243–44. In the present case, the summary judgment record includes no contracts at all. The record is shallow as to the course of dealing, the relationship of the parties, and the customs that led up to the accident. This, too, is cause to deny summary judgment. It could well turn out that the fueling operations for the port or for the cargo ships and tug/barges in question warrant (or do not warrant) application of *Flunker/Knight* indemnity. *See Garrett v. United States Lines, Inc.*, 574 F.2d 997, 1001 (9th Cir.1978).

The cargo shipowner further maintains that a jury could find its crew innocent of negligence even while finding the conditions of ingress unsafe. This might have been the case, for example, if the spring line struck the ladder solely as a result of movement by the tug and churning of the immediate waters. In such a circumstance, the cargo shipowner argues that it did nothing wrong, *i.e.*, it violated no duty to the plaintiff (since it owed only a duty of care to the visitor plaintiff, not a strict-liability duty of seaworthiness) and violated no duty to the barge (since it owed only a duty of care to the barge, not a duty of seaworthiness). Given that there is a more fundamental ground for denying summary judgment, the Court prefers to postpone any final ruling on the point.

\* . \* \* \* \* \*

In conclusion, on the present record, the Court cannot say, as a matter of law, that the barge was seaworthy or, if not, that the barge may recover full indemnity from the cargo shipowner for any unseaworthiness attributed to it by reason of the cargo ship's negligence. The barge's motion for summary judgment is DENIED.

**IT IS SO ORDERED.**